UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

R<small>AUDELIS</small> D<small>OMINGUEZ</small> M<small>ARTINEZ</small>                    P<small>LAINTIFF</small>

v.                                                No. 3:19-cv-189-BJB

S<small>TATE</small> F<small>ARM</small> M<small>UTUAL</small> A<small>UTOMOBILE</small> I<small>NSURANCE</small> C<small>OMPANY</small>       D<small>EFENDANT</small>

\* \* \* \* \*

O<small>PINION</small> & O<small>RDER</small>

If insurers comprehensively investigated and amicably resolved every coverage dispute, why would we need courts? That tort-professor dream of perfect risk distribution suffuses this case: even though State Farm's insured ultimately settled an underlying personal-injury case, the insurer allegedly could've and should've done more to hasten its investigation and resolution. But we live in an imperfect world, where second-guessing by lawyers doesn't conjure bad-faith liability on the part of insurance companies. The Court therefore grants State Farm's motion for judgment on the pleadings and motion for summary judgment.

## I.   S<small>TATE</small>- <small>AND</small> F<small>EDERAL</small>-C<small>OURT</small> L<small>ITIGATION</small>

As Raudelis Martinez tells it, he was involved in a "bad" car crash on November 21, 2018. Amended Complaint (DN 31-2) ¶ 6. Martinez states that he was driving northbound on Shepherdsville Road in Louisville when a vehicle driven by Samuel Howlett and insured by State Farm failed to yield, made a sudden and unsafe left turn, and hit Martinez's vehicle. ¶¶ 6, 9. That collision allegedly caused Martinez bodily injuries, physical and mental pain, and medical expenses. ¶ 8.

Howlett's version of the story differs: he was driving southbound on Shepherdsville when he stopped at a red light, waited for the left-turn arrow to turn green, turned left, and was hit by Martinez's car. Howlett Int. (DN 48-3 at 2–3). According to Howlett, Martinez ran a red light and was traveling about twenty miles per hour above the speed limit. *Id.*

After the accident, police arrived at the scene and took statements from Martinez, Howlett, and Paul Calhoun, who witnessed the accident. Police Report (DN 48-2). Martinez told the officers that Howlett "turned in front of him and it was impossible … to avoid the collision." *Id.* at 2. By contrast, Howlett "stated he attempted to make the left turn and [Martinez] came out of nowhere and struck his vehicle." *Id.* Calhoun's statement corroborated Howlett's in part: Martinez "was

1

speeding" approximately fifteen miles per hour above the speed limit "at the time of the collision." *Id.*

Following the accident, Martinez submitted a third-party claim to State Farm, Howlett's insurer. Am. Compl. ¶¶ 10–11. State Farm investigated the accident and, relying on the police report and an interview with Howlett, made a liability determination that Howlett was not responsible for the collision. Ash Deposition (DN 48-5). State Farm then denied Martinez's claim. State Farm Letter (DN 48-4).

That much is undisputed. Martinez's case, however, places equal emphasis on what State Farm allegedly did *not* do: interview Calhoun or review the officers' body-cam footage, which allegedly captured Martinez telling officers that he lawfully entered the intersection on a yellow light. Response to Motion for Summary Judgment (DN 52) at 2–3; Body-cam Footage (DN 48-11).

Martinez sued Howlett and State Farm in two state-court cases. Complaint (DN 1-2). He sued Howlett in a personal-injury suit that remained in state court. *See* Motion for Summary Judgment (DN 48-1) at 5. And he sued State Farm for allegedly failing to make adequate payment for his third-party insurance claim in violation of the policy terms and Kentucky Unfair Claims Settlement Practices Act ("UCSPA"). Am. Compl. State Farm removed its case to this court, which previously held that removal was proper and stayed the case pending the state court's final resolution of the underlying personal-injury suit. Remand Order (DN 18); Order Issuing Stay (DN 19). That stay remained in place until July 9, 2020, when the court received notice that Martinez and Howlett settled their case. Order Lifting Stay (DN 22).

Initially, State Farm moved for judgment on the pleadings, arguing that none of Martinez's claims allowed for recovery by a purported third-party beneficiary to an insurance policy. Motion for Judgment on the Pleadings (DN 25).[1] Martinez responded by moving to amend his complaint to focus on the bad-faith UCSPA claim. Motion to Amend (DN 31) (citing KRS § 304.12-230); Response to Judgment on the Pleadings (DN 32). State Farm, meanwhile, moved for summary judgment on Martinez's new UCSPA claim on the ground that liability was never "reasonably clear." MSJ at 1–2.

---

[1] State Farm also sought judgment on the pleadings with respect to Martinez's claim for negligent infliction of emotional distress. Compl. ¶¶ 45–49; Motion for Judgment on the Pleadings (DN 25-1 at 6–7). In response, Martinez asked the court to dismiss the negligence claim under FED. R. CIV. P. 41. Motion to Dismiss (DN 29). This Court denied Martinez's motion as inconsistent with Rule 41(a)(2)'s text, which addresses the dismissal of actions, rather than individual causes of action. Text Order (DN 55); *see generally Perry v. Schumacher Group*, 891 F.3d 954, 957–58 (11th Cir. 2018); 9 Wright & Miller, Fed. Prac. & Proc. Civ. § 2362 (4th ed.). Because Martinez has successfully sought leave to amend and the amended complaint does not contain a negligent infliction of emotional distress claim, this count has been eliminated from the lawsuit. *See Perry*, 891 F.3d at 958.

## II.   MOTION TO AMEND

Martinez filed a motion to amend the complaint approximately four months after the stay was lifted. Motion to Amend (DN 31). A party may amend its pleading "as a matter of course within 21 days after serving it, or ... 21 days after service of a responsive pleading." FED. R. CIV. P. 15(a)(1). Outside that window, a party may amend "only with the opposing party's written consent or the court's leave." *Id.* at 15(a)(2). Though courts "should freely give leave when justice so requires," *id.*, leave to amend "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile," *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

State Farm argues that Martinez's amendment is both dilatory and prejudicial—dilatory because the case "ha[d] been pending for a year and a half" before Martinez's motion to amend, and prejudicial because amendment would require State Farm to "redirect [its] focus" to a new UCSPA claim that could have been pled in the original complaint. Response to MTA (DN 35) at 3. Neither argument is persuasive.

*First*, Martinez had no obligation to amend his complaint while the case was stayed. *See Nitride Semiconductors Co. v. Digi-Key Corp.*, No. 17-cv-4359, 2020 WL 13016670, at *4 (D. Minn. Aug. 10, 2020) (collecting cases). And only four months elapsed between the stay being lifted and Martinez filing his motion to amend. *See zvelo, Inc. v. Sonicwall, Inc.*, No. 06-cv-00445, 2012 WL 2872115, at *3 (D. Colo. July 12, 2012) (finding no undue delay before motion to amend filed seven months after stay had been lifted); *cf. Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000) (no error in Court's decision granting amendment twenty-one months after filing).

*Second*, State Farm has already conducted discovery on the UCSPA claim and filed a motion for summary judgment that is now ripe for disposition. MSJ (DN 48-1). Granting the amendment will not result in any additional work for State Farm and therefore will not create any prejudice either. *See Swagerty v. Cate*, No. 2:12-cv-30, 2013 WL 3456967, at *2 (E.D. Cal. July 9, 2013). So the Court grants Martinez's motion to amend (DN 31).

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

Martinez asserts claims against State Farm for breach of its contract with Howlett, breach of the covenant of good faith and fair dealing implied in its contract with Howlett, and tortious breach of the same implied covenant of good faith and fair dealing.[2] Am. Compl. ¶¶ 19–38. State Farm says these allegations fail as a matter of law: Martinez is not a third-party beneficiary with the right to enforce any of the explicit or implicit contractual obligations that run between the insurer and insured. Motion for Judgment on the Pleadings (DN 25-1).[3]

A court reviewing a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) applies the same standard that governs a motion to dismiss under FED. R. CIV. P. 12(b)(6). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This familiar standard requires the Court to accept as true "all well-pleaded factual allegations," but not "legal conclusions." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

As to Martinez's two *contractual* claims, Kentucky law generally permits only a counterparty to sue to enforce a contract. *See Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. App. 1985). That's because incidental beneficiaries do not enjoy contractual privity. *See Louisville Gas & Elec. Co. v. Continental Field Sys., Inc.*, 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005). If, however, a contract is made for a third party's "actual and direct" benefit, the law deems that third party an intended third-party beneficiary with the ability (or "privity") to enforce a contract it didn't agree to. *Id.* (quoting *Sexton*, 692 S.W.2d at 810). This sort of intended-beneficiary relationship "simply does not exist between an insurance company and an injured plaintiff without a judgment finding liability on the part of the insureds." *Valdivia Merrero v. SECURA Ins.*, No. 3:18-cv-613, 2019 WL 321421, at *2 (W.D. Ky. Jan. 24, 2019) (citing *Kentucky Hosp. Ass'n Trust v. Chicago Ins. Co.*, 978 S.W.2d 754, 755 (Ky. Ct. App. 1998)); *see also Heuser v. T.H.E. Ins. Grp.*, No. 3:18-cv-00776, 2020 WL 1442951,

---

[2] Kentucky law recognizes two types of good faith and fair dealing claims—one in contract and one in tort—though the significance of that difference here (if any) is not apparent. *See Buridi v. Branch Banking & Tr. Co.*, No. 3:12-cv-486, 2013 WL 1309763, at *6 (W.D. Ky. Mar. 25, 2013).

[3] State Farm filed its motion for judgment on the pleadings in response to Martinez's original complaint alleging breach of contract and the implied covenant of good faith and fair dealing. The amended complaint, as discussed above, maintained these claims and added a claim arising under the UCSPA claim, which is "a distinct cause of action." MTA at 1. For that reason, the parties (and the Court) reasonably treat the motion for judgment on the pleadings as applicable to these first three counts in the amended complaint.

4

at *2 (W.D. Ky. Mar. 24, 2020) (same); *Starr v. State Farm Mutual Automobile Ins. Co.*, No. 3:18-cv-746, DN 27 at 2–5 (W.D. Ky Aug. 3, 2020) (same); *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009) ("[A]n injured person has no direct right of action against an insurance company until after a judgment has first been obtained against the insured."); *Ford v. Ratliff*, 183 S.W.3d 199, 203 (Ky. Ct. App. 2006) (plaintiff who settled claims against insured could not sue insurer).

Without even discussing how this case law relates to Martinez's two contract claims,[4] Plaintiff's counsel presents a jumbled argument that (as far as the Court understands it) runs like this: Martinez's case against Howlett ended in settlement funded by State Farm; that settlement makes Martinez an intended beneficiary of Howlett's insurance contract; Martinez can therefore bring these contract claims directly against State Farm. *See* Response to MJOP (DN 32) at 2–3. But that's not the law. For Martinez to be an intended beneficiary of State Farm's insurance contract, there must have been "a judgment finding liability" on the part of Howlett. *Merrero*, 2019 WL 321421, at *2. A settlement agreement, however, is not a judgment finding liability. As the Supreme Court of Kentucky has explained, "settlements are not evidence of legal liability, nor do they qualify as admissions of fault." *Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 738 (Ky. 2016); *see also Monarch v. Gorman*, No. 14-cv-5980, 2017 WL 4021128, at *3 (E.D. Pa. Aug. 21, 2017) ("Judgment *requires* a finding of liability as a necessary condition of its entry; settlement does not."). The release in question was just that—a settlement agreement—and nothing more. Release (DN 33-2) (stating that Howlett does not admit liability and instead "expressly den[ies] any liability … from any and all claims" resulting from the car accident). There is no judgment here, so Martinez cannot bring these contract claims against State Farm.

---

[4] Plaintiff's briefing instead focuses on caselaw regarding bad-faith UCSPA claims, which doesn't matter for the purposes of these contract claims. *See* Response to MJOP (citing *Watson v. United States Liab. Ins. Co.*, No. 2018-ca-000475, 2019 WL 2236428, at *4 (Ky. Ct. App. May 24, 2019), *rev'd*, 626 S.W.3d 569 (Ky. 2021)). The cited opinions say only that a settlement of underlying claims can result in an insurer's obligation to pay under the policy, which in turn can satisfy the first element of a bad-faith claim under the UCSPA. *See Watson*, 2019 WL 2236428, at *4. This bad-faith UCSPA caselaw is irrelevant to claims for breach of contract and breach of the implied covenant of good faith and fair dealing, because these are different claims with different elements. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (1993) (three elements of a bad-faith UCSPA claim: the insurer must (1) be obligated to pay the insured's claim under the policy; (2) "lack a reasonable basis in law or fact for denying the claim;" and (3) either have known no reasonable basis existed for denying the claim "or acted with reckless disregard for whether such a basis existed"); *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (three elements of a breach of contract claim: "(1) existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract"); *Buridi*, 2013 WL 1309763, at *6 (requirement of contractual good-faith claim: "defendant 'engaged in some conduct that denied the benefit of the bargain originally intended by the parties'") (quoting *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457–58 (6th Cir.2005)).

Martinez's claim for *tortious* breach of the implied covenant of good faith and fair dealing likewise fails. "To pursue this cause of action, the insured tortfeasor must make an assignment of his claim against his liability insurer to the claimant." *Starr*, No. 3:18-cv-746, DN 27 at 5 (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 531–32 (6th Cir. 2006)). That's because Kentucky courts only find a tort duty of good faith in contracts involving "special relationship[s] not found in ordinary commercial settings." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015) (internal quotations and citation omitted). One of these special relationships arises in contracts between insurers and their insureds. *Buridi*, 2013 WL 1309763, at *6. But outside of an assignment of rights, an injured third party cannot step into the "special" shoes of the insured. *See Starr*, No. 3:18-cv-746, DN 27 at 5–6. Martinez doesn't allege that Howlett assigned Martinez any claim Howlett had against State Farm. Rather, the amended complaint merely states that Martinez was a "third-party beneficiary" to Howlett's insurance contract with State Farm. Am. Compl. ¶ 21. This is "insufficient under Kentucky law." *Rawe*, 462 F.3d at 531; *see also Starr*, No. 3:18-cv-746, DN 27 at 5–6.

## IV.    UNFAIR CLAIMS SETTLEMENT PRACTICES ACT

Martinez's amended complaint includes a bad-faith claim under Kentucky's Unfair Claims Settlement Practices Act, Ky. Rev. Stat. Ann. § 304.12-230. Am. Compl. ¶ 39–43. The Act prohibits insurance companies from engaging in unfair practices such as unreasonable investigation, settlement, and explanation for the denial of claims. KRS § 304.12–230. State Farm moves for summary judgment on the grounds that liability for the accident has never been reasonably clear, and as such, State Farm could not have knowingly or recklessly denied Martinez's third-party claim. MSJ (DN 48-1).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts demonstrating a genuine factual question for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The following three elements, set forth by the Kentucky Supreme Court in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), determine whether Martinez has identified sufficient evidence of bad faith to survive State Farm's motion for summary judgment:

> (1) the insurer must be obligated to pay the claim under the terms of the policy;
> (2) the insurer must lack a reasonable basis in law or fact for denying the claim; *and*
> (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Hollaway*, 497 S.W.3d at 737–38 (quoting *Wittmer*).

The seventeen subsections of Kentucky's UCSPA prohibit insurers from engaging in unfair settlement practices. Martinez's theory is that State Farm violated subsection 4 of the Act ("Refusing to pay claims without conducting a reasonable investigation …") and in doing so gave rise to a bad-faith claim under subsection 6 ("Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear …"). Resp. to MSJ (DN 52) (citing KRS § 304.12–230). He offers two arguments in support. First, during its investigation State Farm interviewed Howlett but never spoke with Paul Calhoun, who witnessed the accident. *Id.* at 3 (citing Police Report (DN 48-2)). Second, State Farm did not review the available body-cam footage taken from the officer who prepared the accident report. *Id.* Martinez argues that if State Farm had, it would have seen Martinez telling officers that the traffic light turned yellow on his approach to the intersection. *Id.* at 4; Body-cam Footage (DN 48-11).

The second *Wittmer* element makes clear that Martinez cannot muster sufficient evidence to prove to a jury that State Farm "lack[ed] a reasonable basis in law or fact for denying the claim."

An insurer lacks a reasonable basis for denying a claim only when the insured's liability is "beyond dispute." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 586 (Ky. 2021).[5] When an insured's liability is "unclear," by contrast, a bad-faith claim fails. *Id.* In *Hollaway*, the Kentucky Supreme Court explained that the second *Wittmer* element is not satisfied if an "absolute duty to pay [the plaintiff's] claim is not clearly established" or if disputes persist about the degree of injury attributable to the insured's actions. 497 S.W.3d at 739. *Hollaway* held "that because the insurer was not willing to concede liability of its insured, the liability insurer was under no absolute duty to pay the plaintiff's claim." *Mosley*, 626 S.W.3d at 586.

---

[5] Martinez's effort to elude the "beyond dispute" standard as contrary to the text of the UCSPA (or, more colorfully, "legislation from the bench") is of course futile. Resp. to MJOP at 8–9 (quoting, *e.g., Smith v. McGill*, 556 S.W.3d 552, 555 (Ky. 2018)). Under basic principles of federalism and stare decisis, a federal district court has no basis to ignore a state supreme court's authoritative interpretation of state law.

*Hollaway* concerned vehicle owners who offered different accounts of a car crash. 497 S.W.3d 733. Each claimed the other was responsible. *Id.* at 734. One received medical treatment and sought compensation from the other's insurer. *Id.* at 735. After a breakdown of settlement negotiations, the injured owner brought a bad-faith UCSPA claim, under subsections 4 and 6, against the insurance company. *Id.* Although the insurer offered to settle the injured owner's underlying negligence claims, and its "early investigative notes" "attribut[ed] fault to its insured," the company ultimately refused to concede liability of its insured. *Id.* at 738. Despite this backtracking, the Kentucky Supreme Court held that liability was still debatable. *Id.* at 738–39.

Like the insurance company in *Hollaway*, State Farm disputes its insured's liability and has provided legitimate reasons to support that position. Recall that its insured denies (and always has denied) responsibility for the accident; Howlett says that he had a green arrow at the intersection and Martinez caused the collision by speeding and running the traffic signal. Howlett Int. at 2–3. Recall as well that Calhoun witnessed the accident and corroborated Howlett's story, telling police that Martinez was speeding. Police Report at 2. This suggests (even if it doesn't prove) that Martinez, not Howlett, was responsible for the accident. If anything, the rationale of *Hollaway* applies with even greater force to this case, because no evidence suggests State Farm ever attributed fault to Howlett. So no evidence would support a jury finding that Howlett's liability was "beyond dispute," or that it was otherwise unreasonable for State Farm to challenge liability under Martinez's claim.

But according to Plaintiff's counsel, that's the point. Plaintiff's counsel argues that subsection four of the UCSPA required more investigation in order for State Farm to determine whether Howlett's liability was actually beyond dispute. State Farm, of course, disputes that its investigation was insufficient. But even assuming Martinez is correct that the adequacy of an investigation remains a factual question subject to reasonable dispute, Martinez cites no authority indicating that he can establish liability by second-guessing the comprehensiveness of an insurer's investigation. This is not a case in which an insurer conducted no investigation at all. And Martinez doesn't allege State Farm conducted the investigation in bad faith. Rather, Martinez accuses State Farm of bad faith for not speaking with a third-party witness whose story, told to the police, *undermined* Martinez's account, and not viewing a video of Martinez's own account, which State Farm already heard in his third-party claim.

Even if these alleged investigative shortcomings amount to "[m]ere technical violations of the statute," which seems questionable at best, they would "not in and of themselves constitute bad faith." *Shaheen v. Progressive Cas. Ins. Co.*, 673 F. App'x 481, 485 (6th Cir. 2016) (citing *Wittmer*, 864 S.W.2d at 890). In *Shaheen*, the plaintiff alleged "technical violations" of subsections 3, 4, and 14. The Sixth Circuit explained that "[e]ven if … [plaintiff] show[ed] [the insurer] violated certain provisions of the

8

KUCSPA, plaintiff must still satisfy Kentucky's threshold standard for bad faith claims against insurers." *Id.* at 488. *Shaheen* explained that "[b]ad faith 'is not simply bad judgment,'" and although the insurance company could perhaps have improved its claims practices, there was insufficient foundation to find the type of conscious wrongdoing upon which a jury could premise a finding of bad faith. *Id.* (quoting *Matt v. Liberty Mut. Ins. Co.*, 798 F. Supp. 429, 433 (W.D. Ky. 1991)).

So too here. Martinez has identified no evidence of "conscious wrongdoing." *See* Response to MSJ at 3–5 (raising questions—some rhetorical, some risible, none terribly probative—about State Farm's position, but not identifying any evidence in support of its own). Even if State Farm initially investigated the information cited by Plaintiff, and even if that information favored Martinez's version of the accident, Howlett's liability still would not have been beyond debate. Howlett still maintains that Martinez was speeding and ran a traffic light, and Calhoun still told police that Martinez was speeding. Absent other evidence (as opposed to conjecture) calling those accounts into question, they alone would prevent a jury from concluding that State Farm lacked any reasonable basis to contest liability. *See Mosley*, 626 S.W.3d at 586–88.

"The only connection to 'liability' [Howlett] had was because of [the] settlement, and as stated, settlements are not evidence of legal liability." *Id.* at 587. This settlement, of course, had little if anything to do with Martinez's critique of the adequacy of State Farm's investigation. And under the Act "an insurer is entitled to challenge a claim through litigation if the claim is 'fairly debatable.'" *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 704 (6th Cir. 2012) (quoting *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889–90 (Ky. Ct. App. 1994)). The record offers no reason to doubt State Farm did just that. And Martinez certainly has not identified any evidence indicating Howlett's liability was beyond dispute and subjected State Farm to a bad-faith claim under Kentucky law.

## ORDER

The Court grants Martinez's motion to amend (DN 31), directs the clerk to file the amended complaint (DN 31-2), grants State Farm's motion for judgment on the pleadings (DN 25), and grants State Farm's motion for summary judgment (DN 48).

Benjamin Beaton, District Judge
United States District Court

July 15, 2022